IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH S. COEY,

    Plaintiff,

vs.                                      No.    CIV 00-1613 MCA/RLP

NEW MEXICO EDUCATORS
FEDERAL CREDIT UNION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court pursuant to *Defendant's Motion for Summary Judgment* (Doc. No. 63). The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, finds that Defendant is entitled to judgment as a matter of law based upon undisputed material facts. Accordingly, Defendant's motion for summary judgment is **GRANTED**.

### I.    BACKGROUND

The undisputed facts viewed in the light most favorable to Plaintiff read as follows. Joseph Coey (Plaintiff) was the President and Chief Executive Officer (CEO) of New Mexico Educators Federal Credit Union ("NMEFCU"). (Compl. ¶ 7). NMEFCU is a federally-chartered credit union, owned by its individual account holders, and governed by an uncompensated, volunteer Board of Directors (the Board) pursuant to NMEFCU's by-



laws and federal credit union rules and regulations. (Undisputed Facts ¶ 5; Compl. ¶ 12). The Board holds the power and responsibility to select the President and CEO. (Undisputed Facts ¶ 6; Compl. ¶ 12). As of January, 12, 2000, the Board was comprised of nine directors. (Undisputed Facts ¶ 16). John Bobroff, Marvin Briggs, Leigh Ann Chavez, Ray Renteria, Martin Serna, Dick Brown, Polly Turner, Ralph Wallace, and Lee Reynis were the nine directors of the Board at the time of Plaintiff's termination. (Undisputed Facts. ¶16). Plaintiff served as the President and CEO of NMEFCU for over twenty years, ultimately overseeing more than $470 million worth of assets. (Compl. ¶¶ 6-10). In March 1999, NMEFCU favorably evaluated Plaintiff and raised his salary by over $30,000 when he was fifty-eight years of age. (Compl. ¶¶ 14, 15 & 28). NMEFCU terminated Plaintiff's employment on January 12, 2000. (Compl. ¶ 17). The Board voted unanimously to invoke Plaintiff's employment agreement, and terminated Plaintiff without cause. (Ans. ¶ 6; Compl. ¶ 18). At the time of termination, Plaintiff was fifty-nine years old and earning an annual salary of $186,000. (Compl. ¶¶26, 19). In February 2000, NMEFCU appointed Terry Laudick as President and CEO. (Compl. ¶¶ 24 & 25). At that time, Mr. Laudick was under forty years of age. (Compl. ¶ 25). He worked for Defendant in the capacity of Vice-President.

On April 10, 2000, Plaintiff filed a grievance regarding his termination with the Board pursuant to its policies and procedures. (Compl. ¶ 20). The Board denied the grievance appeal. (Compl. ¶ 20). On May 25, 2000, Plaintiff filed a "Charge of Discrimination" with

the Equal Employment Opportunity Commission (EEOC) (Compl. ¶ 21) based upon the Age Discrimination in Employment Act (ADEA). Plaintiff received a right-to-sue letter from EEOC. (Compl. ¶ 22). On November 16, 2000, Plaintiff filed the present civil action in the United States District Court for the District of New Mexico, claiming age discrimination under ADEA.

Defendant contends that Plaintiff's termination generally related to the following events. As a federally-regulated credit union, NMEFCU must report and submit to periodic examination by the National Credit Union Administration (NCUA). (Undisputed Facts ¶ 23). In June 1999, NCUA conducted an examination of NMEFCU's financial condition. (Compl. ¶ 2; Undisputed Facts ¶ 23). Plaintiff, along with the Board, met with the NCUA examiners during an "exit interview" to review NCUA's findings. (Undisputed Fact ¶ 25). NCUA conducted a second examination in March 2000. The second report addressed NMEFCU's financial condition during the last six months of Plaintiff's employment. (Undisputed Facts ¶ 32). The report noted that in approximately September 1999, NMEFCU exceeded the five percent of fixed asset ratio, a condition which violated the federal regulations passed by NCUA. (Ex. A; Dep. Coey v.I at 168-169).

The Pathway Project was a building project. It was to be a NMEFCU-owned development which consolidated administrative operations and permitted NMEFCU to move out of various rental offices. (Undisputed Facts ¶ 35). The project had an $800,000 cost overrun, an additional expense not included in the initial proposal.

On November 22, 1999, the Board, with Plaintiff present, met and reviewed a chart which illustrated when current NMEFCU employees would become eligible for full pension under the proposed plan. (Undisputed Facts ¶ 47). The chart indicated that Plaintiff had twenty-five years of service and eighty-three credits, and that he would not be eligible for full retirement under the revised plan until the year 2001. (Undisputed Facts ¶ 47). In fact at that time Plaintiff had twenty-six years of service with eighty-five credits and, under the new guidelines, would have become eligible for full retirement in July 2000. (Undisputed Facts ¶ 48). During the meeting and discussion of the date contained on the chart, Plaintiff did not disclose these facts to the Board. (Undisputed Facts ¶ 49).

## II. ANALYSIS

### A. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. See id. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See id. at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See Anderson, 477 U.S. at 256. A party opposing a properly-supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. See id. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly-supported motion for summary judgment. See id. Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party. See Black Hills Aviation, Inc. v. United States., 4 F.3d 968, 972 (10th Cir. 1994).

### B. Plaintiff's Age Discrimination Claim

The ADEA prohibits an employer from discriminating against an employee who is forty years or older on the basis of the employee's age. See 29 U.S.C. §§ 623(a) (1) and 631(a). Under ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. § 623(a)(1). A plaintiff bringing suit under ADEA can prove age discrimination by either direct or circumstantial evidence. See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir.), cert. denied, 531 U.S. 876 (2000). Absent direct evidence of age discrimination, a plaintiff's claim is analyzed under the framework set forth by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. See id. Once a prima facie case is established, a presumption is created that the employer has unlawfully discriminated against the employee. See Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 254 (1981). In order to rebut this presumption, an employer must "articulate some legitimate, nondiscriminatory reason" for the challenged employment action. See McDonnell Douglas Corp., 411 U.S. at 802. The defendant's burden is merely a burden of production, not a burden of persuasion, and cannot involve any credibility assessment. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Cole v. Ruidoso Mun. Schs, 43 F.3d 1373, 1379 (10th Cir. 1994). Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. See id. at 143. Although age discrimination cases are analyzed using this burden-shifting format, "[t]he ultimate burden of persuading the trier of fact that the

defendant employer intentionally discriminated against the plaintiff remains at all times with the plaintiff." See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-508 (1993).

To establish a prima facie case, a plaintiff must show that (1) he was a member of a protected class; (2) he was doing satisfactory work; (3) he was discharged by the defendant-employer; and (4) he was replaced by a younger person. See Marx v. Schnuck Markets, Inc., 76 F.3d 324, 327 (10th Cir. 1996). In fact, the fourth prong only requires the plaintiff to show that his or her job was not eliminated after the discharge. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1227 (10th Cir. 2000).

In the present case, Plaintiff does not have any direct evidence of an existing policy which itself constitutes discrimination. Thus, the claim has to be analyzed under the McDonnell Douglas burden shifting frame work. Plaintiff met all the elements of a prima facie case. First, Plaintiff is fifty-nine years old and, therefore, is a member of protected class. (Compl. ¶ 26). Second, Plaintiff worked for the credit union for twenty-seven years and received a raise and satisfactory evaluation in March 1999. (Compl. ¶ ¶ 6, 14 & 15). Third, Plaintiff was discharged. Finally, Plaintiff's position remained open after discharge, and he was replaced by a younger man who was less than forty years old. (Compl. ¶ ¶ 17 & 25). At the prima facie stage of the analysis, the Court need only conclude that Plaintiff has shown through credible evidence, including his own testimony, that he was minimally qualified for the position, even if Defendant disputes that evidence. See Bullington v. United

Air Lines, Inc., 186 F.3d 1301, 1316 (10th Cir. 1999). The Court concludes Plaintiff succeeded in making such a prima facie case.

Defendant argues that it had a legitimate non-discriminatory reason for discharging Plaintiff. Defendant has articulated, primarily, the Board's loss of confidence in Plaintiff as a legitimate and non-discriminatory reason for discharging him. Specifically, Defendant articulates three factors which support its conclusion that Plaintiff's job performance was unsatisfactory: (1) his handling of the NCUA examination and its report; (2) his failure to notify the Board of substantial cost overruns with the Pathway Project; and (3) his failure to correct misinformation the Board received regarding his years of service when it was considering revisions to the employees' pension plan. (Def.'s Mem. Supp. Summ. J. at 2 & 6-14). These factors or reasons are facially non-discriminatory; they concern Plaintiff's performance. See Reeves, 530 U.S. at 142. As noted above, Defendant's burden is merely a burden of production and not persuasion. See id. The Court concludes that Defendant met its burden of producing non-discriminatory reasons for the termination. See id.

Once the employer produces a legitimate non-discriminatory reason for the adverse employment actions, the presumption of discrimination no longer exists. See Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994). "'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.'" See Marx, 76 F.3d at 327. Pretext can be established if the plaintiff

shows either "'that a discriminatory reason more likely motivated the employer *or* . . . that the employer's proffered explanation is unworthy of credence.'" Id.; Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994). Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact-finder could rationally find them unworthy of credence. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

English v. Colo. Dep't of Corr., 248 F.3d 1002, 1009 (10th Cir. 2001) (internal quotation marks omitted).

The relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. See Bullington, 186 F.3d at 1318. The law only requires that an employer not discriminate against an employee on the basis of an employee's protected class characteristics. See Kendrick, 220 F.3d at 1232. A Court will not second-guess business decisions made by employers in the absence of some evidence of impermissible motives. See Lucas v. Dover Corp., 857 F.2d 1397, 1404 (10th Cir. 1988). The ADEA is not

intended to be used as a means of reviewing the propriety of a business decision on the part of an employer. Id.

Plaintiff argues that he presented several pieces of evidence which satisfy his burden of demonstrating a genuine issue of material fact as to whether Defendant's proffered reasons are pretextual. He contends that the Board, during its discussions, discussed his age and retirement. (Pl. Res. to Def. Mot. for Summ. J. at 4).

Plaintiff's proffered evidence does not support his argument that the Board discussed his age. (Ex.2; Chavez E-mail dated 12/21/99; Ex.3; Turner Dep. at 104-105; Ex.1; Chavez Dep. at 237; Ex.4; Bobroff Dep. at 55). The evidence submitted by Plaintiff only supports the proposition that the Board discussed his retirement and not age. Further, Plaintiff admits that the Board never made age-related comments during his service as the CEO, nor made employment decisions based on age. (Ex.A; Coey Dep. v.I at 84-86 & 88-89). There is no prohibition against permitting early retirement or offering inducements to retire early. See Raskin v. Wyatt Co., 125 F.3d 55, 62 (2nd Cir. 1997). The discussions of possible retirement between employer and employee do not prove age discrimination. See Lorans v. Crew, No. 98-3419, 2000 WL 1196745 at **4 (S.D.N.Y. 2000). If the circumstances show that the defendant gave a false explanation to conceal something other than discrimination, the inference of discrimination will be weak or non-existent. See Reeves, 530 U.S. at 148.

The NCUA examination and its report, the misinformation the Board received regarding Plaintiff's eligibility to the pension plan, and the Pathway Project are the main

legitimate and non-discriminatory reasons Defendant articulated for losing confidence in Plaintiff. Each of these reasons will be examined below in detail.

### 1. National Credit Union Administration Examination

As a federally-regulated credit union, Defendant must report and submit to periodic examination by NCUA. (Undisputed Facts ¶ 23). NCUA conducted a periodical examination in June 1999 and issued a report. (Undisputed Facts ¶ ¶ 23-24); (Ex. 24). NCUA conducted a second examination or audit in approximately March 2000 for the time period of June 30, 1999, to February 29, 2000. (Undisputed Facts ¶ 31 & 32). The second report addressed NMEFCU's financial condition during the last six months of Plaintiff's employment. (Undisputed Facts ¶ 32). NCUA's examination disclosed that in approximately September 1999, the fixed asset ratio of NMEFCU exceeded five percent, which violated NCUA-imposed federal regulations.

According to Defendant, the first NCUA examination report caused the Board to be concerned about NMEFCU's financial condition. (Def. Mem. in Supp. of Summ. J. at 8). Defendant contends that it was dissatisfied with Plaintiff's handling of the first NCUA examination report findings. Defendant also contends that it was concerned about the five percent increase in fixed asset ratio of NMEFCU, and the resulting violation of federal regulations. (Def. Mem. Summ. J. at 7-9). Plaintiff acknowledges the increase of fixed asset ratio which violated the federal regulations. (Ex. A; Dep. J.Coey at 168-169). However, he contends that the report was misquoted. (Plf. Resp. Summ. J. at 7-12). He also claims that

the financial condition of the credit union was strong. (Plf. Res. Summ. J. at 11-12; Ex. 12; Dep. M. Riley at 70). This explanation does not show that Defendant's reasons are pretextual because the real issue is the Board's loss of confidence in Plaintiff's management based on its understanding of the NCUA findings and not the actual financial strength of NMEFCU.

The second NCUA report for the period ending February 29, 2000 stated that "management has not taken corrective action towards the items outlined in the previous examination's document of resolution. These same problems continue to exist at this examination as well as a number of additional problems were identified." (Ex. 25). The foregoing findings by NCUA demonstrates further justification for the Board's loss of confidence in Plaintiff. Plaintiff's evidence that he was not responsible for the fixed asset increase, that NMEFCU's financial situation was strong despite the problems identified in the reports, and that the reports were misquoted, failed to prove that the Board's reason was merely a pretext. Plaintiff's evidence can only demonstrate that the Board may have made a wrong decision, not that it practiced age discrimination. See Bullington, 186 F.3d 1318. Further, evidence regarding a majority of the Board members demonstrates that the Board was concerned regarding Plaintiff's handling of the NCUA situation. (Ex. B; Bobroff Dep. at 44-45) (Ex. H; Renteria Dep. at 14-17; Ex.I; Chavez Dep. at 70-71 & 75-76; Ex.G; Serna Dep. at 14-18; Ex. E. Turner Dep. at 25-26). Plaintiff does not offer any evidence to disprove this evidence. The only explanation offered by Plaintiff was that the Board never

-12-

raised these concerns before December 1999. (Plf. Resp. Summ. J. at 12) (Ex. 4; Bobroff Dep. at 40, 15-19). However, Plaintiff's evidence does not support even this argument. The evidence accompanying the parties' briefs reveals that the Board was concerned about the NCUA situation and brought its concerns to Plaintiff's attention; however, he brushed them aside. (Ex.4; Bobroff Dep. at 42-45). Plaintiff's evidence does not address the Board's beliefs, observations, concerns, or perceptions and, therefore, he cannot prove that Defendant's reasons for discharging him are merely a pretext.

Defendant asserts that it was concerned regarding Plaintiff's behavior towards the NCUA examiners during the exit interview in June 1999. (Ex.B; Bobroff Dep. v. I, at 55-58). Defendant also contends that it needed the NCUA examiners on its side to help to meet NCUA's objections, but Plaintiff's conduct during the exit interview was confrontational, argumentative, and unreceptive to the examiners. (Ex.B; Bobroff Dep. v. I, at 55-58). While Plaintiff's evidence indicates that the NCUA supervisory examiner considered Plaintiff to be professional, the same examiner also felt that Plaintiff was upset, resistant, and more confrontational than most other CEOs or managers of the credit union. (Ex.11; McFadden Dep. at 30).

In considering the foregoing, the Court concludes that Plaintiff's evidence does not raise a material issue of fact to support a reasonable inference that Defendant's facially non-discriminatory reason for discharging him was a pretext.

## 2. Misinformation About Pension Plan

It is undisputed that the Board considered a proposed revision of their pension scheme. (Undisputed Facts ¶ 41 - 45). Defendant contends that the Board lost confidence in him because, at the time the pension plan revision was under consideration, Plaintiff did not correct misinformation received by the Board regarding his years of service. (Def. Mem. in Supp. of Summ. J. at 2). Plaintiff admits that he provided the Board with a chart which illustrated when the long-term current NMEFCU employees become eligible for pensions under the proposed plan. (Undisputed Facts ¶ 46). Plaintiff also admits that this chart incorrectly stated his years of service as twenty-five instead of twenty-six and that he did not correct this mistake when making his presentation to the Board. (Undisputed ¶ 47 - 49). He contends that some Board members realized the mistake, and that it made no difference to them. (Plf. Resp. to Def. Mot. for Summ. J. at 18). The evidence accompanying the parties' briefs shows that some of the Board members felt that Plaintiff gave them inaccurate information or misrepresented the facts to them. (Ex. G; Dep. Serna. at 22; Ex. 1; Chavez Dep. at 205). Plaintiff provided an explanation that he was not responsible for preparing the document which contained the inaccurate information, and that he did not realize that his number of years was listed incorrectly. (Ex.9; Coey Dep. at 180-181 & 187; Ex. 17 Erikson Dep. at 41). The Court concludes that Plaintiff's evidence merely explains the misinformation. It fails to prove the Board's loss of trust in him as a pretext.

### 3. Pathway Project

The Pathway Project is a building project. It was a NMEFCU-owned development consolidating administrative operations and permitting NMEFCU to move out of various rental offices. (Undisputed Facts ¶ 35). Defendant claims that the Board felt that Plaintiff misled them regarding the final costs. (Def. Mem. Summ. J. at 12). Defendant argues that the Board relied upon Plaintiff to provide information on the project, but Plaintiff did not include a large expense item of $800,000 for road work in the initial proposal. (See id.) Defendant claims that the Board was dissatisfied with Plaintiff's poor planning and the manner in which he disclosed the additional expense of $800,000. (Def. Mem. Summ. J. at 12). Plaintiff admits that the Board was concerned about the unanticipated street development, but claims that he informed the Board of the costs of the street development in April 1999. (Ex. 9; Coey Dep v.II at 211-212). He also admits that the Board assigned him the duty to manage the Pathway Project. (Ex.9; Coey Dep. at 211). Plaintiff disputes that the Board relied upon him and argues that the Board hired independent consulting agencies and reviewed all the necessary documents needed. (Ex.9; Coey Dep. at 211). Katherine Darwin, Vice President of NMEFCU, stated that the Board did not understand the details of the construction contract, or that "change of orders" meant an increased expense to the project. (Ex.16; Darwin Dep. at 53-54). She also stated that Plaintiff had knowledge of numerous details regarding the Pathway Project. (Ex.16; Darwin Dep. at 53-54). Further, Plaintiff admitted that he presented the cost of off-site development (roadway, curbs, gutters,

and sewers) in April, but he did not articulate them as a change order. (Ex.9; Coey Dep. at 211-212). This evidence does not rebut Defendant's evidence that they did not realize the increased cost until November 1999. Even assuming Plaintiff presented the increased expense to the Board in April 1999, Plaintiff's evidence does not contradict the Board's concerns or loss of confidence in Plaintiff in providing them complete information and in his handling of the Pathway Project. (Ex.F; Reynis Dep. at 89; Ex.I; Chavez Dep. at 188-189; Ex.E; Turner Dep. at 48; Ex.B; Bobroff Dep. at 48; Ex.H; Renteria Dep. at 14-15). The Court concludes that Plaintiff's evidence raises no reasonable inference of pretext to Defendant's non-discriminatory reason that the Board questioned the manner in which he handled the increased expenditure.

### 4. Other Evidence of Pretext

Plaintiff also argues that Defendant's loss of confidence in him is merely a pretext. (Plf. Resp. to Def. Mot. for Summ. J. at 25). He disputes Defendant's evidence regarding Polly Turner, who stated that every Board member felt that Plaintiff breached their trust and that he did not trust them as Board members. (Ex.E; Turner Dep. at 128 & 129). The only evidence Plaintiff offers to rebut Defendant's evidence is Ms. Turner's admission that she inferred loss of confidence from other Board members. (Ex.E; Turner Dep. at 129). In essence, Plaintiff admits Ms. Turner's statement, but argues that because she inferred it, such inference does not have merit. This argument only goes to show that the Board lost confidence in Plaintiff and that Defendant's non-discriminatory reasons are not pretextual.

Plaintiff further argues that the appointment of Mr. Laudick to replace him, without conducting further search or seeking other qualified candidates, demonstrates that Defendant's offered reasons are merely pretextual. However, the evidence accompanying the parties' briefs indicates that Plaintiff himself endorsed Mr. Laudick as his successor in either 1998 or 1999. (Ex. A; Coey Dep. at 68-69; Ex. 5; Laudick Dep. at 223).

Plaintiff's favorable reviews in March 1999 are not dispositive to the present inquiry. The critical issue in Title VII cases is whether the employee was performing well in his job at the time of termination. See Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 126 (7th Cir. 1993). Whether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time. See Weihaupt v. Am. Med. Ass'n 874 F.2d 419, 427 (7th Cir. 1989). The employer's expectations are measured as of the time the employee is discharged. See Grohs v. Gold Bond Bldg. Prods., 859 F.2d 1283, 1287 (7th Cir. 1988).[1]

Finally, Plaintiff claims that the Board's dissatisfaction with him is due to Mr. Laudick instigating a series of meetings with individual Board members and using his influence to terminate Plaintiff.[2] (Pl. Resp. Summ. J. 2, 5-6 & 24). This reasoning is without

---

[1] These cases concern the prima facie element of Plaintiff's satisfactory work, but can be analogized to the present case because the issue here concerns Defendant's favorable evaluation of Plaintiff in March 1999—ten months before Defendant discharged Plaintiff.

[2] Plaintiff presented no evidence of secret meetings between Mr. Laudick and any Board members other than with Mr. Parker (an advisor to the Board). Even during this meeting, the evidence accompanying the parties' briefs only shows that Mr. Laudick tried to find out about Plaintiff's plans (how long he might continue as CEO) as he had other offers available. (Ex.6; Parker Dep. at 110-111).

merit. Plaintiff can only claim relief under ADEA if he was discriminated based upon age, but not for any other unfair treatment. See Kendrick, 220 F.3d at 1232.

Plaintiff's arguments that the Board hired an inexperienced person, such as Mr. Laudick, or that the Board should not have lost confidence in him and dismissed him, are without merit. As noted above, the relevant inquiry is not whether the Defendant's proffered reasons were wise, fair, or correct, but whether Defendant honestly believed those reasons and acted in good faith upon those beliefs. See Bullington, 186 F.3d at 1318. The ADEA is not intended to be used as a means of reviewing the propriety of a business decision on the part of an employer. See Lucas, 857 F.2d at 1404. The ADEA is also not intended as a vehicle for judicial review of business decisions. Id.

### III. CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's claim for age discrimination under ADEA.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Summary Judgment* is **GRANTED**.

SO ORDERED, this 30 day of September, 2002, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge